IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ULTRATEC, INC. and CAPTEL, INC.,

                Plaintiffs,

        v.

SORENSON COMMUNICATIONS, INC.
and CAPTIONCALL, LLC,

                Defendants.

OPINION AND ORDER

13-cv-346-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ULTRATEC, INC. and CAPTEL, INC.,

                Plaintiffs,

        v.

SORENSON COMMUNICATIONS, INC.
and CAPTIONCALL, LLC,

                Defendants.

OPINION AND ORDER

14-cv-66-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In these civil actions, plaintiffs Ultratec, Inc. and CapTel, Inc. contend that defendants Sorenson Communications, Inc. and CaptionCall, LLC have infringed various patents of plaintiffs. Defendants have filed a counterclaim in which they contend that plaintiffs breached their contract with the Federal Communications Commission and that defendants have the right to sue on the breach because they are among the intended

1

beneficiaries of that contract.  The parties have filed various motions in both cases related to this alleged contract.

In case no. 13-cv-346-bbc, plaintiffs have moved for summary judgment on defendants' counterclaim of breach of contract; in case no. 14-cv-66-bbc, plaintiffs have moved to dismiss the contract counterclaim.  The undisputed facts presented in the pleadings and attachments to the pleadings are sufficient to decide both motions.  I conclude that even if a contract existed, it did not obligate plaintiffs to license their patents to defendants; therefore, defendants were not intended third party beneficiaries.  I will dismiss defendants' counterclaim for breach of contract with prejudice in both cases.

Furthermore, in case no. 14-cv-66-bbc, plaintiffs have moved to dismiss three more of defendants' counterclaims that relate to the purported contract:  1) promissory estoppel; 2) fraud; and 3) a counterclaim under Wis. Stat. § 100.18.  Defendants have withdrawn the third counterclaim, Dfts.' Br., dkt. #49, at 2, n.2, so it will be dismissed with prejudice. Finally, I conclude that on the facts alleged, defendants cannot state claims for promissory estoppel or fraud, so these counterclaims will be dismissed from case no. 14-cv-66-bbc with prejudice.

With respect to case no. 13-cv-346-bbc, plaintiffs have moved for summary judgment on defendants' affirmative defenses of 1) patent misuse; 2) unclean hands; and 3) equitable estoppel.  Dkt. #87.  Defendants have filed cross motions for summary judgment on similar grounds, contending that plaintiffs are not entitled to injunctive relief on the basis of 1) the adequacy of plaintiffs' relief at law (which defendants frame as failure to meet the "eBay

requirements"); 2) judicial, promissory and equitable estoppel; and 3) plaintiff Ultratec's purported contract with the Federal Communications Commission. Dkt. #79. All of these issues pertain to Ultratec's purported contract with the commission. Although defendants frame some of these defenses as barring plaintiffs' claims, I conclude that they all arise in equity and have to do with the type of relief available to plaintiffs. Because the extent to which plaintiffs are entitled to relief has not been determined yet, it is premature to consider the question of what relief is available to plaintiffs. Therefore, I am denying the motions without prejudice, except the part of defendants' motion that frames the contract claim as an affirmative defense. Because I am granting plaintiffs' motion on the merits of defendants' contract claim, I am denying that aspect of defendants' motion.

From the parties' pleadings, attachments to pleadings and proposed findings of fact, I find the following facts are undisputed for the purpose of deciding these motions.

## UNDISPUTED FACTS

Plaintiff Ultratec, Inc. is a supplier of telecommunication devices for the deaf and hard of hearing. It owns a number of patents for services and devices related to telecommunication for the deaf and hard of hearing. Plaintiff CapTel, Inc. is a "sister company" to Ultratec. It licenses some of these patents and operates certain systems for captioning telephone conversations. One of those systems is internet-based captioned telephone services, in which conversations between deaf or hard of hearing users and hearing users are captioned by call assistants using an internet connection.

3

Defendants Sorenson Communication, Inc. and CaptionCall, LLC, design, manufacture and market communication products and services to deaf and hard of hearing individuals, including products using internet-based connections.

Under the Americans with Disabilities Act of 1990, disabled telephone users cannot be required to pay for the costs of relaying or captioning calls.   Thus, the Federal Communications Commission reimburses the costs for qualifying telecommunications relay services for the disabled.   Ultratec petitioned the commission to approve internet-based captioned telephone services as a technology qualified for reimbursement.   In 2006, Ultratec wrote to the commission, memorializing its commitment to license its patents related to this type of technology, stating that "Ultratec Inc., the inventor of captioned telephone VCO [voice carry over], has licensed its technologies at reasonable rates since captioned telephone service first became available over five years ago and will continue to license its technologies, including technologies relating to IP [internet protocol] captioned telephone, going forward." Dfts.' Ans., dkt. #43, 14-cv-66-bbc, exh. A, at 1.

In 2007, the commission issued a declaratory ruling in which it granted Ultratec's request to include internet-based captioned telephone services under the relay services funding.   The ruling did not mandate use of this technology or require users to make purchases from Ultratec.   All companies taking part in the relay services funding programs have to be certified and meet the commission's standards, but companies may use a variety of types of technology to participate.   The commission "condition[ed] [its] approval on Ultratec's representation that it will continue to license its captioned telephone technologies,

4

including technologies relating to IP CTS [captioned telephone service], at reasonable rates."
In re Telecommunications Relay Services and Speech-to-Speech Services for Individuals with
Hearing and Speech Disabilities, Internet-based Captioned Telephone Service, No. 03-123,
22 FCC Rcd 379, Federal Communications Commission (January 11, 2007), Dfts.' Ans.,
dkt. #43, 14-cv-66-bbc, exh. B, at 1.

In its 2007 ruling, the commission also discussed a 2003 declaratory ruling in which
Ultratec petitioned the commission to recognize captioned telephone service as a form of
relay service that could receive funding. The commission noted that in the previous ruling
it had

> recognized that Ultratec's captioned telephone service was provided only via
> proprietary equipment and technology, and that Ultratec was the only
> company offering consumers any type of captioned telephone service.
> Therefore, to avoid authorizing a particular proprietary technology, rather
> than a particular functionality or service, the Commission defined captioned
> telephone service as "any service that uses a device that allows the user to
> simultaneously listen to, and read the text of, what the other party has said,
> on one standard telephone line." [In re Telecommunications Relay Services,
> and Speech-to-Speech Services for Individuals with Hearing and Speech
> Disabilities, No. 98-67, 18 FCC Rcd 16121 (Aug. 1, 2003)] The Commission
> added that "TRS providers, therefore, that may choose to offer captioned
> telephone . . . service are not bound to offer any particular company's service."
> [Id.]

Id. at 5-6.

In 2008, Ultratec's president and chief executive officer, Robert Engelke, emailed a
representative of Sprint, discussing licensing terms. Engelke he stated that his understanding
of the requirements from the commission were that Ultratec "make the Captel technologies
available to legitimate TRS providers under reasonable terms and conditions." Decl. of

Jessica Quon, dkt. #85, 13-cv-346-bbc, exh. #31, at 3.  Engelke went on to say that he was concerned that if the company did not offer a license to Sprint, it might "seriously injure [Ultratec's] credibility with the FCC and kill [its] chances of getting Captel made a permanent, required TRS service."  Id.  He drafted a similar email around the same time in which he stated that it was a "necessity that Ultratec offer to make its Captel technologies available to legitimate TRS providers under reasonable terms and conditions."  He went on to say that Ultratec had "no choice" but to offer its licenses to company X "or get into serious trouble with the FCC which would be a big mistake."  Id., exh. #32, at 1.

Plaintiffs have licensed other providers but have not licensed or offered to license their patents to defendants.  Defendants have not sought a license from plaintiffs outside this litigation.

OPINION

A.  Counterclaim of Breach of Contract Asserted in Both Cases

Defendants assert a counterclaim of breach of contract in both lawsuits.  Plaintiffs have moved to dismiss the breach of contract counterclaim in case no. 14-cv-66-bbc and for summary judgment on the contract counterclaim in case no. 13-cv-346-bbc.  In deciding the motion to dismiss, I have considered only defendants' pleadings and the documents they attached to their answer.  Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 505 (7th Cir. 2013) ("'[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'

6

These documents may be considered by a district court in ruling on the motion to dismiss without converting the motion into a motion for summary judgment.") (quoting McCready v. eBay, Inc., 453 F.3d 882, 891 (7th Cir.2006)).  In deciding the motion for summary judgment, I have considered the parties' pleadings, proposed findings of fact and the exhibits of the Ultratec's letter to the Federal Communications Commission, the commission's 2007 declaratory ruling and two emails from Robert Engelke.

1.  Choice of law

The parties have not made clear whether federal or state law applies to the breach of contract counterclaim.  In their argument in support of their motion for summary judgment, plaintiffs state summarily that "federal common law and general contract principles of contract law control the interpretation of the alleged contract."  Plts.' Br., dkt. #90, at 18. Without explanation, they cite cases that apply federal common law when a federal governmental entity is a party to the alleged contract.  Priebe & Sons, Inc. v. United States, 332 U.S. 407, 411 (1947); Long Island Savings Bank v. United States, 503 F.3d 1234, 1245 (Fed. Cir. 2007); Smith v. Central Arizona Water Conservation District, 418 F.3d 1028, 1034 (9th Cir. 2005).  However, in their motion to dismiss (filed later), plaintiffs cite only an opinion from this court interpreting Wisconsin law.  In other sections of their briefs on both motions, defendants and plaintiffs cite law without explanation from the Court of Appeals for the Seventh Circuit, the Court of Appeals for the Federal Circuit and from district courts applying state law.  In their motion for summary judgment on the contract

as an "affirmative defense," dkt. #79, defendants say that either Wisconsin law or federal common law may apply to this situation but that both sets of laws lead to the same conclusion.

I conclude that defendants are correct on their last point. Because the standards under Wisconsin law and federal common law are substantially similar and lead to the same conclusion, I have considered both.


2.  Existence of a contract

Defendants say that the Federal Communications Commission and Ultratec entered into a contract and that defendants are the intended third party beneficiary of that contract. They compare this situation to the one in Apple, Inc. v. Motorola Mobility, Inc., 11-cv-178-bbc, 2011 WL 7324582 (W.D. Wis. June 7, 2011) and Apple, Inc. v. Motorola Mobility, Inc., 886 F. Supp. 2d 1061, 1084 (W.D. Wis. 2012), in which this court held that a company entered into a contract with a standards setting organization. Defendants say that the FCC acted like a standards setting organization that made Ultratec agree to its policies in exchange for membership into the group. In standards setting organizations, companies receive the benefits of participating in the development of standards for certain types of technologies on the condition that they license their patents on "fair, reasonable and nondiscriminatory terms" or on "reasonable and nondiscriminatory terms" (often referred to as FRAND or RAND terms).

Courts have found that these arrangements constitute contracts in which competitors

are intended third party beneficiaries.  Microsoft Corp. v. Motorola, Inc., 696 F.3d 872, 885 (9th Cir. 2012) (finding existence of contract where "Motorola made promises to the ITU to license its standard-essential patents worldwide to all comers.  In exchange, it received the benefit of having its patents implicated in the standards."); Microsoft Corp. v. Motorola, Inc., 854 F. Supp. 2d 993, 999 (W.D. Wash. 2012) ("The court agrees with Microsoft that through Motorola's [RAND] letters to [SSOs], Motorola has entered into binding contractual commitments to license its essential patents on RAND terms."); Realtek Semiconductor Corp. v. LSI Corp., 946 F. Supp. 2d 998, 1006 (N.D. Cal. 2013) ("Similar to the situation in Motorola, the defendants are contractually obligated under their Letters of Assurance to the IEEE to license the [patents] on RAND terms . . . . ").

In this case, defendants say that the FCC and Ultratec entered into a contract when the commission *offered* its approval to fund internet-based captioned telephone services on the condition that Ultratec "continue to license its captioned telephone technologies, including technologies relating to IP CTS, at reasonable rates."  Ultratec *accepted* that offer by receiving compensation under the interstate relay services fund and the two exchanged *consideration* when Ultratec received funds and the commission expanded services available to the deaf and hard of hearing.  Kamikawa v. Keskinen, 44 Wis. 2d 705, 710, 172 N.W.2d 24, 26 (1969) ("The basic elements of a contract, of course, are an offer, an acceptance, and consideration.").  See also Suess v. United States, 535 F.3d 1348, 1359 (Fed. Cir. 2008) ("The requirements for a contract between the United States and a private party are (1) mutuality of intent to contract, (2) consideration, (3) lack of ambiguity in offer and

9

acceptance, and (4) authority on the part of the government agent entering the contract.").

I am skeptical about defendants' argument that the arrangement between the FCC and Ultratec constitutes a contract. Unlike private standards setting organizations, the commission is a governmental entity and decisions or rules made by the government are not often contracts, even when they appear to be. For a contract to exist, the governmental entity must have the authority to enter into the contact, <u>Suess</u>, 535 F.3d at 1359, and there must be clear evidence that it intended to create a contract rather than to promulgate policies and regulations. <u>Mola Development Corp. v. United States</u>, 516 F.3d 1370, 1378 (Fed. Cir. 2008) ("'An agency's performance of its regulatory or sovereign functions does not create contractual obligations.' Rather, 'there must . . . be a clear indication of intent to contract and the other requirements for concluding that a contract was formed.'") (quoting <u>D & N Bank v. United States</u>, 331 F.3d 1374, 1377-78 (Fed. Cir. 2003)) (internal citations omitted) (ellipses in original). The parties do not develop their arguments on either element. Nevertheless, I need not reach the question whether the contract exists. Even if I assume that it does, I conclude that the purported contract did not require plaintiff Ultratec to license its patents to defendants and that defendants were not intended third party beneficiaries to the purported contract.

3. <u>Contract terms</u>

Defendants vacillate in characterizing the contract between the commission and Ultratec. In their pleading in the 14-cv-66-bbc case, defendants say that "Ultratec

represented to the FCC on November 27, 2006 that it would continue to license 'its technologies, including technologies relating to IP captioned telephone' at reasonable rates," Dfts.' Ans., dkt. #43, at ¶ 137, and that the commission represented in its declaratory ruling that it would condition its approval on Ultratec's agreement to license.  Id. at ¶ 141. Defendants attach the 2006 letter and the commission's declaratory ruling to their answer. In the 13-cv-346-bbc case, defendants argue that the agreement arose from the parties' "course of dealing," but they cite the commission's declaratory ruling and plaintiffs' letter to the commission as evidence of the parties' intentions.  Thus, I turn to these documents for evidence of the alleged contract's terms.

In the letter, Ultratec memorializes its communication with the commission in which it said that it has licensed its patents on reasonable terms and would continue to do so: "Ultratec Inc., the inventor of captioned telephone VCO, has licensed its technologies at reasonable rates since captioned telephone service first became available over five years ago and will continue to license its technologies, including technologies relating to IP captioned telephone, going forward."  Dfts.' Ans., dkt. #43, exh. A, at 1.  In turn, the commission "condition[ed] [its] approval on Ultratec's representation that it will continue to license its captioned telephone technologies, including technologies relating to IP CTS, at reasonable rates."  Dfts.' Ans., dkt. #43, exh. B, at 1.  However, defendants do not cite anything in this exchange to the effect that plaintiff Ultratec promised to license its patents on a nondiscriminatory basis.

In the "FRAND" and "RAND" decisions cited by defendants, the policies to which

11

the parties agreed stated explicitly that the parties were required to license their standards setting patents on "fair, reasonable and nondiscriminatory terms." E.g., Realtek Semiconductor Corp., 946 F. Supp. 2d at 1001 ("Agere submitted Letters of Assurance, as required by the IEEE Standards Board Bylaws, stating that it 'is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard.'"). See also Microsoft Corp., 854 F. Supp. 2d at 996 (holding that parties must point to specific terms and explain their argument for contract interpretation before court can conclude that RAND terms apply to contract). Only the term "reasonable" can be found in the documents making up the purported contract in this case.

This is the end of defendants' argument on plaintiffs' motion to dismiss in 14-cv-66-bbc. Defendants say only that the letter and declaratory ruling (which they attach to their pleading) constitute the contract and bind Ultratec to license its patents to defendants. Because it is plain from the alleged agreement that it does not bind Ultratec to that requirement, plaintiffs' motion to dismiss must be granted. Burke, 714 F.3d at 505.

With respect to the motion for summary judgment, defendants go beyond the letter and declaratory ruling. They argue that parties' true intentions can be found in an email sent by Robert Engelke, Ultratec's president and CEO, in which Engelke says that "in order to get the FCC to OK . . . IP Captel, CTI had to promise the FCC that we would '. . . make the Captel technologies available to legitimate TRS Providers under reasonable terms and conditions' . . ." (Defendants do not identify what Engelke was quoting.) Defendants say

this means that plaintiffs intended to enter into a contract that required them to offer unlimited licenses, but their argument fails for two reasons. First, Engelke did not say "*all* legitimate TRS providers"; he said merely said "legitimate TRS providers." Thus, I cannot say as a matter of law that his interpretation was that Ultratec must offer its licenses to *all* providers; it is equally possible that he meant that Ultratec must offer licenses to certain "major" providers or to a sufficient number of providers, which may or may not include defendants.

Second, defendants' argument rests on an email sent more than a year and a half *after* the commission's decision to approve Ultratec's petition, which was the final step in determining the terms of the parties' alleged contract (the final moment of mutual assent between the parties). Even if Engelke's opinion could be said to represent Ultratec's position in 2008, this subsequent interpretation cannot serve as evidence of what the parties intended when they formed their agreement. (The parties dispute whether and how the parol evidence rule should be applied in this case. Even if I assume the email is not parol evidence, an email drafted months after the mutual assent of the parties is not significant evidence of the parties' intent.)

I note that defendants discuss in other sections of their brief an email sent by Engelke around the same time as the above email, in which Engelke says that Ultratec may get into "serious trouble" with the commission if it does not offer its licenses to Sprint. This email is of no help to defendants. For one, it represents a much-later interpretation of the alleged contract. Furthermore, the email still does not express the view that Ultratec had to license

13

its patents to all companies; rather Engelke appears to mean that Ultratec *should* offer licenses to that *particular* relay services provider. I conclude that defendants have failed to prove that Ultratec was not bound to license its patents to all providers or to defendants.

4. Intended third party beneficiary

Even if I were to conclude that Ultratec was bound to offer its licenses to all providers, defendants would still have to show that they are intended third party beneficiaries. Because it is questionable whether defendants have alleged sufficient facts to support a finding in their favor on this point and because I conclude that plaintiffs' motion to dismiss must be granted on other grounds, this part of my opinion applies only to the summary judgment motions filed in case no. 13-cv-346-bbc. I conclude that defendants have not shown that they are intended third party beneficiaries of any contract between plaintiffs and the FCC.

Under Wisconsin and federal common law, a party may be an intended third party beneficiary when the contract expressly says so or when there is an implied intent to benefit a third party *directly*. Glass v. United States, 258 F.3d 1349, 1354 opinion amended on other grounds on reh'g, 273 F.3d 1072 (Fed. Cir. 2001) ("In order to prove third party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly."); Mercado v. Mitchell, 83 Wis. 2d 17, 28, 264 N.W.2d 532, 538 (1978) ("The general rule on third-party beneficiaries in Wisconsin is that one claiming such status must show that the contract was entered into by the parties directly and primarily for his benefit.

14

The benefit must be more than merely incidental to the agreement.").  (I note that plaintiffs argue that contracts with governmental entities have a presumption against the presence of intended third party beneficiaries.  Defendants dispute this argument.  However, they lose even if I apply the more liberal standard set forth above, which does not require a special showing in governmental contracts.)

In this case, the FCC stated that it "condition[ed] [its] approval on Ultratec's representation that it will continue to license its captioned telephone technologies, including technologies relating to IP CTS, at reasonable rates."  Dfts.' Ans., dkt. #43, exh. B, at 1. The FCC is a governmental entity whose purpose includes the protection and furtherance of the public interest.  It approves relay services technology for funding so that technology can be offered at no cost to the deaf and hard of hearing.   In that context, avoiding monopolies and encouraging competition will result in more effective technology for the deaf and hard of hearing, at least in theory.  Competitors in the marketplace may benefit from these policies, but defendants have offered no evidence that they are *intended* third party beneficiaries of the FCC's efforts to improve technology for the deaf and hard of hearing.

On the other hand, standards setting organizations, like those discussed in Apple, Inc., 886 F. Supp. 2d at 1084, are private organizations organized specifically for the purpose of developing standards and fostering competition among technology companies, so it stands to reason that they intend to benefit competing companies.  Moreover, standards setting organizations mandate the use of certain patented technologies to even enter the marketplace.  At times, the FCC mandates the use of standard technologies as well, but it

15

did not do so in this case.  By contrast, the FCC did not impose a requirement that all companies wanting to provide services qualifying for relay services funding had to adopt a certain type of technology; rather, the commission merely added another technology to the list that qualified for reimbursement.  Interested companies did not have to use the technology covered by Ultratec's patents in order to provide technology qualifying for relay services funding.  Indeed, the commission added competitors to the marketplace by approving new technology, rather than limiting competition by setting a standard.  Thus, the commission did not need to protect potential competitors in the same way standards setting organizations do, making it less likely that competitors are intended beneficiaries in this context.

I conclude that even if a contract existed between plaintiffs and the FCC, the contract did not obligate plaintiffs to license their patents to defendants.  Defendants were not intended beneficiaries.  Thus, plaintiffs are entitled to summary judgment on defendants' breach of contract counterclaim in case no. 13-cv-346-bbc.

### B.  Counterclaims Asserted only in Case No. 14-cv-66-bbc

Relying on arguments similar to their breach of contract counterclaim, defendants assert promissory estoppel and fraud counterclaims.  Because I conclude that plaintiff Ultratec did not promise the FCC that it would license its patents to defendants or on a nondiscriminatory basis, defendants have no basis for contending that they were misled and that their reliance was justifiable.  Therefore, plaintiffs' motion to dismiss these

16

counterclaims must be granted.

Again, the parties do not explain the appropriate choice of law, but they apply Wisconsin law.  I will do the same.  <u>FutureSource LLC v. Reuters Ltd.</u>, 312 F.3d 281, 283 (7th Cir. 2002) (in absence of any discussion of choice of law issues by parties, court applies law of forum state).

## 1. <u>Promissory estoppel</u>

Under Wisconsin law, a claim of promissory estoppel requires parties to allege that the answers to the following questions are yes:  "(1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee?  (2) Did the promise induce such action or forbearance?  (3) Can injustice be avoided only by enforcement of the promise?" <u>Hoffman v. Red Owl Stores, Inc.</u>, 26 Wis. 2d 683, 698, 133 N.W.2d 267, 275 (1965). Inherent in these elements is the requirement that the accused party actually broke the alleged promise and that the suing party's reliance on the broken promise was justifiable. <u>Matter of Alexander's Estate</u>, 75 Wis. 2d 168, 183, 248 N.W.2d 475, 484 (1977). Defendants' counterclaim fails on these grounds.

Defendants' position is that Ultratec promised the FCC that it would license its patents but failed to do so; Ultratec's promise induced them to develop and market internet-based captioned telephone services; defendants believed that the technology was not covered by plaintiffs' patents and, if it was, they would be able to receive licenses.  They allege that

17

they relied on Ultratec's 2006 letter to the FCC.  However, the letter states simply that Ultratec "has licensed its technologies at reasonable rates since captioned telephone service first became available over five years ago and will continue to license its technologies, including technologies relating to IP captioned telephone, going forward."  Dfts.' Ans., dkt. #43, exh. A, at 1.  The only promise contained in this text is that Ultratec will license its patents to *some* companies.  Ultratec did not promise that it would license its patents on a nondiscriminatory basis to any company who did (or did not) ask for a license.  Defendants acknowledge that plaintiffs have licensed the technology to *some* companies.  Thus, defendants have failed to allege facts to support its contention that Ultratec has broken its promise.

Furthermore, defendants do not explain how they came to know about the 2006 letter and its contents.  Even in those situations in which third parties have the right to enforce a contract, they must show that they knew about the contractual promise before they undertook the actions that led to their damages.  Hoffman, 26 Wis. 2d at 699, 133 N.W.2d at 275 ("Ordinarily only the promisee and not third persons are entitled to enforce the remedy of promissory estoppel against the promisor.  However, if the promisor actually foresees, or has reason to foresee, action by a third person in reliance on the promise, it may be quite unjust to refuse to perform the promise.") (citing 1A Corbin, Contracts, p. 220, sec. 200).  Defendants could not have relied on plaintiffs' alleged misrepresentation if they did not know of the letter until after they undertook their allegedly infringing activities.

Nevertheless, even if I assume that defendants actually relied on the letter, they have

18

not alleged that their reliance was justifiable.  Matter of Alexander's Estate, 75 Wis. 2d at 183, 248 N.W.2d at 484 ("[I]t is an accepted rule of law that a party's reliance must be justifiable or reasonable.").  Ultratec did not promise to license any of its competitors or say that it would do so proactively.  Consequently, it was neither reasonable or justifiable for defendants to develop and market an entire line of products and services in reliance on Ultratec's vague and general statement to a third party that it would license its patents. Because defendants have not stated a claim and defendants have not taken advantage of their opportunity to propose additional facts, I will dismiss the claim with prejudice.

### 2.  Fraud

Plaintiffs have moved to dismiss defendants' fraud counterclaim in case no. 14-cv-66-bbc on grounds similar to those raised in the preceding section.  "At common law [in Wisconsin], a plaintiff alleging fraud must prove:  1) a representation of material fact; 2) the representation's falsity; 3) the intent to deceive (or reckless disregard for truth or falsity); 4) intent to defraud or to induce action; 5) justifiable reliance by the deceived party."  State v. Abbott Laboratories, 2012 WI 62, 341 Wis. 2d 510, 541-42, 816 N.W.2d 145, 161. Defendants say that Ultratec misrepresented its past conduct and future intentions to the Federal Communications Commission in its 2006 letter when it stated that it had licensed its patents and would continue to do so.  Defendants argue that this misrepresentation induced them to develop and market the technology that plaintiffs now say infringes their patents.

Once again, defendants fail to allege the falsity of this representation and the reasonableness of their reliance.  As discussed in the preceding section on promissory estoppel, Ultratec's statements in the 2006 letter were not misrepresentations.  Furthermore, for the same reasons discussed above, defendants have not alleged facts showing that they were justified in relying on Ultratec's statements.   Therefore, I am dismissing this counterclaim with prejudice.


3.  Claim under Wis. Stat. § 100.18

Defendants have advised the court that they are withdrawing this claim.  Dfts.' Br., dkt. #49, at 2, n.2.


C.  Affirmative Defenses in Case No. 13-cv-346-bbc

The parties have filed cross motions for summary judgment on defendants' affirmative defenses relating to the alleged contract between Ultratec and the Federal Communications Commission.  These affirmative defenses include:  1) patent misuse; 2) unclean hands; 3) judicial, promissory and equitable estoppel; and 4) the adequacy of relief at law for plaintiffs (which defendants frame as failure to meet the "eBay requirements").  According to defendants, most of these defenses relate only to the question whether plaintiffs are entitled to injunctive relief.

However, with respect to unclean hands and patent misuse, defendants contend that these defenses bar plaintiffs' *claims*.  It is true that these defenses can bar the *enforceability* of

plaintiffs' patents.  See, e.g., State v. Kaczmarski, 2009 WI App 117, 320 Wis. 2d 811, 823, 772 N.W.2d 702, 708 ("'Before a court may deny a plaintiff *relief in equity* upon the "clean hands" doctrine, it must clearly appear that the things from which the plaintiff seeks relief are the fruit of [his or her] own wrongful or unlawful course of conduct.'") (quoting S & M Rotogravure Service v. Baer, 77 Wis. 2d 454, 467, 252 N.W.2d 913 (1977)) (emphasis added); C.R. Bard, Inc. v. M3 Systems, Inc., 157 F.3d 1340, 1372 (Fed. Cir. 1998) ("Patent misuse arises in equity, and a holding of misuse renders the patent unenforceable until the misuse is purged; it does not, of itself, invalidate the patent.").

However, the basis for these defenses is plaintiffs' alleged misconduct in promising to license its patents in exchange for the FCC's approval of internet-based captioned telephone services.  With respect to patent misuse, defendants also discuss a noncompete clause in plaintiffs' licensing agreements as a basis for misconduct.  In either case, the alleged misconduct does not have to do with the granting of the patents but rather with plaintiffs' licensing of the patents.  Therefore, the question is not the scope or validity of the patents but whether plaintiffs should have licensed the patents.  This question goes to whether plaintiffs can request injunctive relief or whether they must settle for licensing fees.  Because this question has to do only with the *type* of relief available to plaintiffs and the extent of plaintiffs' relief has not yet been determined, summary judgment on these defenses is premature.  Therefore, the motions will be dismissed without prejudice with respect to these issues.

ORDER

21

IT IS ORDERED that

1. Plaintiff Ultratec, Inc.'s and CapTel Inc.'s motion to dismiss defendants Sorenson Communication, Inc's and CaptionCall, LLC's counterclaims of breach of contract, promissory estoppel, fraud and claim under Wis. Stat. § 100.18, filed in case no. 14-cv-66-bbc, dkt. #45, is GRANTED.  The counterclaims are DISMISSED from that case.

2. Plaintiffs' motion for summary judgment on defendants' counterclaim of breach of contract filed in case no. 13-cv-346-bbc, dkt. #87, is GRANTED and this claim is DISMISSED.

3. Defendants' motion for summary judgment on their "defense" of breach of contract filed in case no. 13-cv-346-bbc, dkt. #79, is DENIED.

4. Plaintiffs' motion for summary judgment on defendants' affirmative defenses of patent misuse, unclean hands and equitable estoppel in case no. 13-cv-346-bbc, dkt. #87, and defendants' motion for summary judgment on their affirmative defenses on adequacy of plaintiffs' relief at law (the "eBay requirements") and judicial, promissory and equitable estoppel in case no. 13-cv-346-bbc, dkt. #79, are DENIED.

Entered this 28th day of August, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

22