## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

ULTRATEC, INC. and CAPTEL, INC.,

POST-TRIAL JURY
INSTRUCTIONS
[DRAFT: 1 OCTOBER 2015]

Plaintiffs,

v.                                                                      14-cv-66-jdp

SORENSON COMMUNICATIONS, INC. and
CAPTIONCALL, LLC,

Defendants.

*Notice to Counsel*: The headings included in this draft are for the ease of the parties' use at the charging conference. They will be deleted or modified before these instructions go to the jury.

### INTRODUCTION

Ladies and Gentlemen of the Jury:

Now that you have heard the evidence and the arguments, I will give you the instructions that will govern your deliberations in the jury room. It is my job to decide what rules of law apply to the case and to explain those rules to you.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you.

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against any party, must be unanimous. You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict. All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

Your deliberations will be secret. You will never have to explain your verdict to anyone.

If you have formed any idea that I have an opinion about how the case should be decided, disregard that idea. It is your job, not mine, to decide the facts of this case.

The case will be submitted to you in the form of a special verdict, consisting of [three] questions. In answering the questions, you should consider only the evidence that has been received at this trial. Do not concern yourselves with whether your answers will be favorable to one side or another, or with what the final result of this lawsuit may be.

**Answers Not Based on Guesswork**

If, after you have discussed the testimony and all other evidence that bears upon a particular question, you find that the evidence is so uncertain or inadequate that you have to guess what the answer should be, then the party with the burden of proof as to that question has not met the required burden of proof. Your answers are not to be based on guesswork or speculation. They are to be based upon credible evidence from which you can find the existence of the facts that the party must prove to satisfy the burden of proof on the question under consideration.

**Burden of Proof**

When I say that a particular party must prove something by "clear and convincing evidence," it means that when you have considered all of the evidence in the case, you are convinced that it is highly probable that it is true. This is sometimes described as the "intermediate" burden because it is a higher burden of proof than "more probably true than not true," which is the "preponderance of the evidence" standard applicable to many civil cases. But this is a lower burden than the "beyond a reasonable doubt" standard, which is the burden is criminal cases. Defendants have

the burden to prove the answers to all of the questions on the special verdict form by clear and convincing evidence.

[11.2.1 THE PATENT SYSTEM]

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about those aspects of patent law that specifically relate to this case.

[11.2.2 PERSON OF ORDINARY SKILL]

Some issues in patent cases are determined by reference to a "person of ordinary skill in the field of the invention," a term that I will use later in these instructions. The person of ordinary skill in the field of the invention is a hypothetical person who is presumed to know the prior art and to possess ordinary creativity. In this case, the field of the invention is telecommunications technology for the deaf and hard of hearing. It is up to you to decide the level of ordinary skill. In making this decision, you should consider all the evidence, including:

- The levels of education and experience of the inventors and persons working in the field;

- The types of problems encountered in the field;

- Prior art solutions to those problems; and

- The sophistication of the technology in the field.

[11.2.4 THE PATENT CLAIMS]

The claims of a patent are the numbered sentences at the end of the patent. The claims describe what the patent owner may prevent others from doing.

Claims are usually divided into parts called "limitations" or "requirements." For example, a claim that covers the invention of a table may describe the tabletop, four legs and glue that holds the legs and the tabletop together. The tabletop, legs and glue are each a separate limitation or requirement of the claim.

We are concerned with claims 11, 12, and 13 of the '398 patent. The issue of infringement has already been resolved. It has been established that defendants' captioned telephone service used echo cancellation to cancel the voice of the assisted user. Defendant contends that claims 11, 12, and 13 are invalid.

In deciding a challenge to the validity of a patent, you must compare the claims to the asserted prior art. You must consider each claim of the patent separately.

[11.2.9 INTERPRETATION OF THE PATENT CLAIMS]

I have previously defined certain phrases in the claims. You must use these definitions in making your decision about invalidity. The phrases I have defined are as follows:

The claim term "assisted unit," found in claim 13, means "assisted user."

The claim term "telephone line" means "a communication line capable of carrying voice and/or data."

The claim term "cancel the voice of the assisted user from the second telephone line so that the relay does not hear the voice of the assisted user, so the relay can caption all the words on the second telephone line" should be given its plain meaning. This claim limitation is satisfied so long as a call assistant with normal hearing would not hear the words spoken by the assisted user while captioning a call.

The phrase "so the relay can caption all the words on the second telephone line without causing confusion to the assisted user" is a non-limiting statement of intended result. You should give this phrase no weight in the invalidity analysis.

[11.2.6 INDEPENDENT AND DEPENDENT CLAIMS]

Patent claims may exist in two forms, called independent claims and dependent claims. An independent claim stands on its own and does not refer to any other claim of the patent. A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the requirements of the other claims to which it refers, as well as the requirements in the dependent claim itself.

Earlier I described a hypothetical patent claim for a table that described the tabletop, four legs, and glue to hold the legs and tabletop together. That is an example of an independent claim. In that same hypothetical patent, a dependent claim might be one that stated, "the same table in the initial claim, where the tabletop is square."

Claim 11 is an independent claim. Claims 12 and 13 are dependent claims. Claim 12 includes all the steps in Claim 11, plus an additional requirement. Claim 13 also includes all the steps in claim 11, plus an additional requirement.

[11.2.8 "COMPRISING"]

When a patent claim uses the term "comprising," it means that the invention includes the listed requirements, but is not limited to those requirements.

[11.3.1 VALIDITY — GENERAL]

Defendants have challenged the validity of the '398 patent claims on the grounds of obviousness and lack of enablement.

Each of the claims of the '398 patent is presumed to be valid. For that reason, defendants have the burden of proving invalidity by clear and convincing evidence.

You must evaluate and determine separately the validity of each claim of the patent.

## [11.3.2 INVALIDITY — SPECIFICATION REQUIREMENTS]

The patent law contains certain requirements for a patent specification. Defendants contend that claims 11, 12, and 13 of the '398 patent are invalid because the specification fails to satisfy the law's enablement requirements.

If you find that defendants have proved by clear and convincing evidence that this requirement is not met for an asserted claim, then that claim is invalid. I will now explain to you in detail the specification requirements that defendants say makes the patent claims invalid.

[11.3.2.2 SPECIFICATION REQUIREMENTS — ENABLEMENT]

The law requires that the "specification" section of the patent contain enough information to enable a person of ordinary skill in the field of the invention to make and use the invention, without an unreasonable amount of experimentation. A patent does not have to state information that persons of ordinary skill in the field would be likely to know or could obtain without undue effort.

Defendants contend that claims 11, 12, and 13 of plaintiffs' patent are invalid because they fail to meet this requirement. To succeed on this contention, defendants must prove by clear and convincing evidence that the specification does not enable a person of ordinary skill in the field of the invention to develop and use the method covered by claims 11, 12, and 13, without an unreasonable amount of experimentation. Whether the amount of experimentation is unreasonable depends on the complexity of the field of the invention and the level of expertise and knowledge of persons of ordinary skill in that field.

If defendants prove this as to a particular claim by clear and convincing evidence, you should find that claim invalid.

[11.3.3 DEFINITION OF "PRIOR ART"]

In addressing some of defendants' invalidity defenses, you will have to consider what is disclosed in the "prior art." The parties agree that the following references are prior art:

- U.S. Patent Application Publication No. 2002/0085685 ("Engelke '685 Publication")

- U.S. Patent No. 6,504,910 to Engelke et al. ("Engelke '910 Patent")

- U.S. Patent No. 6,141,415 to Tandhoni S. Rao ("Rao")

- Advanced Signal Processing and Noise Reduction by Saeed V. Vaseghi ("Vaseghi")

The parties dispute whether the CapTel trials performed by plaintiffs between 2001 and 2003 constitute prior art. If you find the CapTel trials are prior art, you may consider them in deciding whether the asserted claims are obvious. If you find that the CapTel trials are not prior art, then you may not consider them in deciding whether the asserted claims are obvious.

[11.3.4 THE CAPTEL TRIALS]

You may consider the CapTel trials as prior art only if defendants prove by clear and convincing evidence that the CapTel trials were in prior public use or on sale in the United States before February 18, 2003.

**Prior Public Use**

The CapTel trials were in prior public use if before February 18, 2003, if the CapTel technology was both:

- Commercially exploited in the United States; and

- Ready for patenting.

An invention is ready for patenting when it is reduced to practice. An invention is reduced to practice when it has been determined that it works for its intended purpose. The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose.

**On sale**

The CapTel trials are prior art if they were on sale before February 18, 2003. An item is "on sale," as that term is used in patent law, if it was the subject of a commercial offer for sale in the United States and if, at that time, there was reason to believe that the item would work for its intended purpose. A single offer to sell, primarily for profit rather than for experimental purposes, is sufficient, even if no actual sale was made.

15

**Experimental use**

The law recognizes that an inventor must be given the opportunity to develop an invention through experimentation. Plaintiffs contend that the CapTel trials were experimental. Certain activities are experimental if they are a legitimate effort to test patentable features of the service or to determine if the service will work for its intended purpose. So long as the primary purpose is experimentation, it does not matter that the public used the service or that the inventor incidentally derived profit from it.

The experimentation must relate to the features of the claimed invention, and it must be for the purpose of technological improvement, not commercial exploitation. If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation. A test done primarily for marketing, and only incidentally for technological improvement, is not an experimental use. After there has been a reduction to practice, the experimental use exception is unavailable.

If you find that defendants have shown that it is highly probable that there was a prior public use or sale of the one-line service used during the CapTel trials, then the burden is on plaintiffs to come forward with evidence showing that the primary purpose of the prior public use or prior commercial offer for sale was experimental. You may find that the CapTel trials do not constitute a prior sale of the one-line service if the evidence provided by plaintiffs regarding the experimental use

prevents defendants from meeting their burden of establishing that it is highly probable that there was a prior public use or prior commercial offer for sale.

[11.3.6 OBVIOUSNESS]

Defendants contend that claims 11, 12, and 13 of plaintiffs' patent are invalid because they are obvious. Special Verdict Question [No. 2] asks whether certain patent claims are invalid because they were obvious to one of ordinary skill in the field of invention.

To succeed on this contention, defendants must prove by clear and convincing evidence as to the particular claim you are considering that a person of ordinary skill in the field of the invention, who knew about all the prior art existing on February 18, 2003, would have come up with the invention at that time. Obviousness may be shown by considering two or more items of prior art in combination.

In deciding obviousness, you should put yourself in the position of a person with ordinary skill in the field as of February 18, 2003. You must not use hindsight; in other words, you may not consider what is known now or what was learned from the '398 patent. In addition, you may not use the '398 patent as a roadmap for selecting and combining items of prior art.

In making your decision regarding obviousness, you should consider the following:

- The scope and content of the prior art. You may consider prior art that was reasonably relevant to the problem the inventor faced, including prior art in the field of the invention and prior art from other fields that a person of ordinary skill would consider when attempting to solve the problem.

- Any differences between the prior art and the invention in the patent claim.

- The level of ordinary skill in the field of the invention at the time of the invention.

- Any of the indications of non-obviousness described in the next instruction that are shown by the evidence.

### [11.3.6.1 SECONDARY CONSIDERATIONS]

In deciding obviousness you should consider any of the following factors that, if they have been shown by the evidence, may indicate that the invention was not obvious.

- The invention achieved commercial success resulting from the claimed invention, rather than from something else, such as innovative marketing;

- The invention satisfied a long-felt need;

- Others copied the invention;

- Defendants or others in the field praised the invention; or

- Others sought or obtained rights to the patent from the patent holder.

It is up to you to decide if these factors have been shown by the evidence. No single factor is more or less important than the others. However, a factor is evidence that the patent is not obvious only if that factor is the result of a patented feature of the invention.

[11.3.6.2 COMBINING OF PRIOR ART REFERENCES]

Even if every element of the claimed invention is found in the prior art, it does not necessarily prove obviousness because many inventions rely on building blocks of prior art. But a claimed invention may be obvious even if the prior art does not teach each claim limitation, so long as the evidence shows that one of skill in the art would modify the prior art to obtain the claimed invention. In deciding this, you may consider, among other things, any of the following factors:

- Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

- Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

- Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

- Whether the prior art teaches away from combining elements in the claimed invention;

- Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

- Whether the change resulted more from design incentives or other market forces.

INSTRUCTIONS AFTER CLOSING ARGUMENTS

**Selection of Presiding Juror; Communication with the Judge; Verdict**

When you go to the jury room to begin considering the evidence in this case you should first select one of the members of the jury to act as your presiding juror. This person will help to guide your discussions in the jury room.

You are free to deliberate in any way you decide, or select whomever you like as the presiding juror. When thinking about who should be presiding juror, you may want to consider the role that a presiding juror usually plays. He or she serves as the chairperson during the deliberations and has the responsibility of ensuring that all jurors who desire to speak have a chance to do so before any vote. The presiding juror should guide the discussion and encourage all jurors to participate. I encourage you at all times to keep an open mind if you ever disagree or come to conclusions that are different from those of your fellow jurors. Listening carefully and thinking about the other juror's point of view may help you understand that juror's position better or give you a better way to explain why you think your position is correct.

Once you are in the jury room, if you need to communicate with me, the presiding juror will send a written message to me. However, do not tell me how you stand as to your verdict.

As I have mentioned before, the decision you reach must be unanimous; you must all agree.

**Suggestions for Conducting Deliberations:**

To help you determine the facts, you may want to consider discussing one question at a time, and use my instructions to the jury as a guide to determine whether there is sufficient evidence to prove all the necessary legal elements for each question. I also suggest that any public votes on a verdict be delayed until everyone can have a chance to say what they think without worrying what others on the panel might think of their opinion. I also suggest that you assign separate tasks, such as note taking, time keeping and recording votes to more than one person to help break up the workload during your deliberations. I encourage you at all times to keep an open mind if you ever disagree or come to conclusions that are different from those of your fellow jurors. Listening carefully and thinking about the other juror's point of view may help you understand that juror's position better or give you a better way to explain why you think your position is correct.